<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | HONORABLE KAREN M. WILLIAMS |
| v. | Criminal No. 22-cr-405 (KMW) |
| JAMES JOHNSON, | |
| *Defendant*. | **MEMORANDUM OPINION** **AND ORDER** |

**WILLIAMS, United States District Judge**.

**THIS MATTER** comes before the Court upon Defendant James Johnson's ("Defendant")
Motion for Early Termination of Supervised Release ("Motion," Dkt. No. 10) pursuant to 18
U.S.C. § 3583(e)(1); the Government's opposition (Gov't Opp., Dkt. No. 12) thereto; and
Defendant's reply ("Reply," Dkt. No. 13). The Court has considered the parties' submissions
without oral argument pursuant to L.Civ.R. 78.1(b).

For the reasons set forth below, Defendant's Motion will be **DENIED**.

**I.      BACKGROUND**

Defendant's underlying convictions arise from his participation, at age nineteen, in a series
of violent armed robberies committed by members of a Brooklyn street gang known as Criminals
Getting Paid ("CGP"). (Motion at 2; Gov't Opp. at 1.) In February 1998, Defendant and others
robbed the New Clarkson Luncheonette in Brooklyn, New York. (Gov't Opp. at 1-2 (citing *United
States v. Ozem Thomas, et al.*, Crim. No. 98-860 ("E.D.N.Y."), Dkt. Nos. 426 at 3; 519 at 3-4).)
During the robbery, Defendant held a firearm to a store employee's head while other participants
took money from the cash register and a Lotto machine. (*Id.*) As Defendant and the others fled, the

store owner pursued them. (*Id.*) Defendant then turned, pointed his firearm, and shot the owner in the stomach. (*Id.*) The victim was hospitalized and died twelve days later. (*Id.*)

Defendant was charged in the Eastern District of New York with conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, unlawful use of a firearm during a crime of violence, and murder through the use of a firearm. (Gov't Opp. at 2 (citing E.D.N.Y. Dkt. No. 127)).) The criminal proceedings that followed were lengthy and included two trials, multiple appeals, resentencings, a motion for reduction of sentence, and several motions for compassionate release. (*Id.* (citing E.D.N.Y. Dkt. No. 519 at 2-6); Motion at 2, Dkt. No. 10.) Following his first trial, Defendant received an aggregate sentence of thirty years' imprisonment. (Motion at 2, Dkt. No. 10.) After the Second Circuit vacated his conviction and he was retried, Defendant was again convicted and received a life sentence. (*Id.*) The matter was later remanded for resentencing, and on October 13, 2011, Judge Allyne R. Ross imposed an aggregate sentence of twenty-five years' imprisonment, to be followed by five years of supervised release. (*Id.*) Defendant was also ordered to pay a $400 special assessment and $79,500 in restitution. (*Id.*)

On December 3, 2021, Judge Ross granted Defendant's third motion for compassionate release. (Gov't Opp. at 2 (citing E.D.N.Y. Dkt. No. 528); Motion at 2, Dkt. No. 10.) The court reduced Defendant's custodial sentence to time served, while leaving intact the five-year term of supervised release and the restitution obligation. (Motion at 2; Gov't Opp. at 2.) Defendant was released from Bureau of Prisons ("BOP") custody on December 6, 2021, at which time his term of supervised release began. (Gov't Opp. at 2; Motion at 2.) Jurisdiction over his supervision was later transferred to this District. (Motion at 3; *see* Order Transferring Jurisdiction, Dkt. No. 1.)

Defendant has now served the substantial majority of his five-year term of supervised release. In support of early termination, Defendant emphasizes that he has maintained stable

employment, including employment at Ocean Casino Resort in Atlantic City; has supported his family; has purchased a vehicle; has made restitution payments; and has generally complied with the conditions of supervision. (Motion at 3, 6-8.) Defendant further contends continued supervision is unnecessary, consumes limited Probation resources, and restricts his ability to pursue out-of-state employment and relocation opportunities, including the possibility of moving to a lower-cost state. (*Id.* at 3, 7-8; Reply at 3-4.) Defendant also notes that his restitution obligation will remain enforceable regardless of whether supervised release is terminated. (Reply at 3.)

The record also reflects, however, that Defendant's performance on supervision has not been without issue. In July 2023, Probation notified the Court that Defendant had not made restitution payments for a significant period following his release. (Report on Individual Under Supervision, Dkt. No. 8; Gov't Opp. at 2.) Defendant explains that this resulted from a lapse in communication and that, once his obligation was clarified and he was given instructions for payment, he began making payments and has not missed one since. (Reply at 2-3.) In May 2025, Defendant admitted to Probation that he had used marijuana, in violation of the standard condition prohibiting unlawful controlled-substance use. (Report on Individual Under Supervision, Dkt. No. 9; Gov't Opp. at 2-3.) Probation recommended that no formal action be taken with respect to that violation. (*Id.*; Gov't Opp. at 3.)

Defendant filed the present motion on February 17, 2026, after completing approximately fifty months of his sixty-month term of supervised release. (Motion at 1, 5.) The Government filed opposition on March 20, 2026, arguing that early termination is not warranted in light of the seriousness of the underlying offense, Defendant's prison disciplinary history, his restitution-payment lapse, his marijuana use while on supervision, and the absence of concrete changed circumstances justifying early termination. (Gov't Opp. at 3-6.) Defendant filed a reply on April

3

3, 2026, arguing that his conduct demonstrates genuine rehabilitation, that the Government gives insufficient weight to his successful reentry, and that continued supervision serves no meaningful purpose. (Reply at 1-4.) His term of supervised release is scheduled to expire on December 6, 2026. (Motion at 1; Gov't Opp. at 2.)

## II.    LEGAL STANDARD

A district court may terminate a term of supervised release after the defendant has completed at least one year of supervision if, after considering the applicable factors set forth in 18 U.S.C. § 3553(a), it is satisfied that such action is warranted by the defendant's conduct and the interest of justice. 18 U.S.C. § 3583(e)(1). In evaluating a motion for early termination, courts consider the factors set forth in §§ 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7), including: the nature and circumstances of the offense; the defendant's history and characteristics; the need to afford adequate deterrence and protect the public; the applicable sentencing range and policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. *Id.*

The Third Circuit has explained that "[t]he expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)). Although a court must consider the applicable § 3553(a) factors, it is not required to make specific findings as to each factor, and a statement that the court has considered the statutory factors is generally sufficient. *Id.* at 52-53.

The Third Circuit has further held that a defendant seeking early termination need not demonstrate "exceptional, extraordinary, new, or unforeseen circumstances" to obtain relief under

§ 3583(e)(1). *Id.* at 53. Nevertheless, because a sentence originally imposed is presumed to be sufficient, but not greater than necessary, to satisfy the purposes of sentencing, courts generally expect that some change in circumstances or other justification will support a request to terminate supervision before the expiration of the term originally imposed. *See id.* Ultimately, whether to grant early termination rests within the sound discretion of the district court after consideration of the relevant statutory factors and the particular circumstances of the case.

### III.    DISCUSSION

#### a.  The Nature and Circumstances of the Offense

The Court first considers the nature and circumstances of the offense and Defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). There is no dispute that Defendant has made significant progress since his release from custody. The Court recognizes and commends his efforts to reintegrate into society, maintain employment, support his family, and live a law-abiding life. Nevertheless, the seriousness of the underlying offense remains a substantial consideration under § 3553(a).

As discussed above, Defendant participated in a series of violent armed robberies committed by members of a Brooklyn street gang. During one such robbery, Defendant shot a pursuing store owner, who later died from his injuries. (Gov't Opp. at 1-2.) The resulting convictions ultimately led to a lengthy term of imprisonment and a five-year term of supervised release. Although Defendant has now completed most of that supervision term, the Court cannot ignore the gravity of the conduct that gave rise to the sentence in the first instance.

The Court also notes that the supervision term presently at issue was imposed after extensive litigation, multiple resentencings, and, ultimately, a grant of compassionate release that reduced Defendant's sentence to time served while leaving intact the five-year term of supervised

5

release. The Court is mindful that the sentencing court determined that a five-year period of supervision remained appropriate even after reducing Defendant's custodial sentence. While that determination does not foreclose early termination, it weighs against modifying the sentence absent a persuasive showing that doing so is warranted.

Accordingly, the Court finds that the nature and circumstances of the offense weigh against early termination.

### b.  Defendant's Conduct While on Supervised Release

The Court next considers Defendant's conduct while on supervised release. Defendant's performance on supervision has been largely positive. Since his release in December 2021, he has maintained stable employment, supported his family, made restitution payments, and avoided new criminal conduct. (Motion at 3, 6-10.) The Court agrees that these accomplishments reflect genuine effort and meaningful rehabilitation.

At the same time, Defendant's supervision record has not been entirely without incident. In July 2023, Probation notified the Court that Defendant had failed to make restitution payments for a substantial period following his release. (Dkt. No. 8.) Defendant explains that the lapse stemmed from confusion regarding payment procedures and the transition among multiple probation officers. (Reply at 2-3.) The Court accepts that explanation and notes that Defendant has since made consistent payments. In addition, Defendant admitted to marijuana use in May 2025, in violation of the conditions of supervised release. (Dkt. No. 9.) Probation recommended that no formal action be taken, and the Court does not view that violation as particularly serious standing alone. Nevertheless, it remains part of the supervision record.

The Court therefore agrees with Defendant that his overall performance on supervision has been commendable. However, the Court is not persuaded that his conduct is so exceptional as to

6

warrant early termination. As courts within this District have repeatedly recognized, compliance with the conditions of supervision, maintaining employment, and making restitution payments are expected aspects of successful supervision. *See, e.g., United States v. DePaula*, No. 16-CR-474 (ES), 2025 WL 1296234, at *2 (D.N.J. May 5, 2025); *United States v. Santoro*, No. 21-76, 2022 WL 37471, at *3 (D.N.J. Jan. 4, 2022). While Defendant's conduct weighs in favor of the Motion, the Court finds that it does so only modestly.

### c.  The Interests of Justice and the Remaining Term of Supervision

Finally, the Court considers whether early termination would be warranted in the interests of justice. Defendant argues that continued supervision unnecessarily restricts his freedom of movement, limits potential employment opportunities, and impedes his ability to relocate to a lower-cost state. (Motion at 3; Reply at 3-4.) The Court does not discount those concerns. Supervised release necessarily imposes obligations and restrictions that do not apply to individuals who have completed their sentences.

However, the Court finds that Defendant has not identified a sufficiently concrete hardship that would justify shortening the supervision term imposed by the sentencing court. Although he references potential employment and relocation opportunities, he has not identified a specific job offer that has been lost because of supervision, nor has he demonstrated that Probation has prevented him from pursuing legitimate employment or relocation requests. The Court therefore finds that the asserted burdens of supervision are largely prospective and speculative.

The Court is likewise unpersuaded that the interests of justice require modification of the sentence at this late stage. Defendant correctly notes that extraordinary or unforeseen circumstances are not required under § 3583(e)(1). *See Melvin*, 978 F.3d at 53. Nevertheless, the

Court must still determine whether early termination is warranted in light of the purposes of sentencing and the particular circumstances of the case.

Here, Defendant's Motion is based principally on his successful adjustment to supervision. The Court views that adjustment as a significant achievement. But successful reintegration is one of the primary goals of supervised release. The fact that supervision has been effective does not necessarily mean that the remaining portion of the supervision term should be eliminated.

The Court also finds it significant that Defendant's term of supervised release is scheduled to expire on December 6, 2026. As of the date of this Opinion, fewer than six months remain on that term. The Court further notes that Probation opposes Defendant's request for early termination of his supervised release. (Gov't Opp. at 3 n.2.) Under these circumstances, the Court is not persuaded that the interests of justice favor modifying a sentence that was previously determined to be sufficient, but not greater than necessary, to achieve the purposes of sentencing. Rather, the Court concludes that allowing the supervision term to run its remaining course is the more appropriate result.

Accordingly, after consideration of the relevant § 3553(a) factors, Defendant's conduct while on supervision, and the interests of justice, the Court finds that early termination of supervised release is not warranted.

## IV.    CONCLUSION AND ORDER

For the reasons set forth above; and for good cause shown;

IT IS on this __12th__ day of **June, 2026**, hereby

**ORDERED** that Defendant's Motion (Dkt. No. 10) is **DENIED**.

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

8